Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| ANTONIO OTERO MORALES<br><br>Apelante<br><br><br>v.<br><br><br>EDELYN IVETTE OTERO GONZÁLEZ<br><br>Apelada | KLAN202401006 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: NJ2023CV00125<br><br>Sala: 702<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO, EJECUCIÓN DE SENTENCIA, DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de enero de 2025.

Comparece ante *nos*, Antonio Otero Morales (Otero Morales o apelante) y nos solicita que revisemos una *Sentencia* emitida el 24 de septiembre de 2024, y notificada el 25 de septiembre de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Bayamón. Mediante dicho dictamen, el TPI *desestimó* la *Demanda* sin perjuicio por falta de jurisdicción y ser prematura la reclamación de daños.

Asimismo, nos solicita que revisemos una *Resolución* emitida el 23 de octubre de 2024, y notificada el 24 de octubre de 2024, mediante la cual el foro primario le ordenó a Otero Morales a satisfacer $290.00, en concepto de costas en un término de treinta (30) días.

Por los fundamentos que se exponen a continuación, se *confirma* la *Sentencia* apelada.

Número Identificador

SEN2025 _____

**I.**

El 22 de septiembre de 2023, Otero Morales presentó una *Demanda* sobre incumplimiento de contrato y ejecución de sentencia en contra de Edelyn Ivette Otero González (Otero González o apelada). En resumen, alegó que el 3 de enero de 2017, la parte apelada presentó una demanda en su contra con el fin de que no se le compeliera a retirar un pozo séptico ubicado dentro de los límites de su finca. Sostuvo que el 18 de febrero de 2022, alcanzaron un acuerdo confidencial dentro del caso DAC2017-0001. Acentuó que dicho acuerdo no fue informado al Tribunal ni incorporado a la *Sentencia.* Argumentó que una vez firmado el acuerdo y emitida la *Sentencia,* la parte apelada de forma temeraria, caprichosa y contumaz se negó a cumplir con lo pactado.

Así pues, acreditó que, ante el incumplimiento con los términos del acuerdo transaccional, el 5 de mayo de 2022, compareció ante el Tribunal en el caso DAC2017-0001 en solicitud de auxilio de jurisdicción. Indicó, además, que el 12 de septiembre de 2022, las partes informaron un plan para darle cumplimiento al acuerdo y este no fue cumplido. Consecuentemente, reclamó gastos ascendentes a $2,501.50 y que se ordene la ejecución de la sentencia.

Luego de varios incidentes procesales, el 28 de agosto de 2024, la parte apelante presentó una *Solicitud de Sentencia Sumaria Parcial.* A grandes rasgos, solicitó la ejecución de la sentencia al amparo del acuerdo transaccional firmado entre las partes. Posteriormente, el 15 de septiembre de 2024, la parte apelada presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria Parcial.* En apretada síntesis, adujo que la parte apelante conocía y participó en las actividades que se han llevado a cabo para dar cumplimiento al dictamen emitido en el caso DAC2017-0001.

Además, coligió que Otero Morales no ha incurrido en gasto alguno para que se lleven a cabo los trabajos de agrimensura, porque ha sido Otero González quien ha incurrido en tales gastos.

Así las cosas, el 24 de septiembre de 2024, notificada el 25 de septiembre de 2024, el foro primario emitió una *Sentencia* mediante la cual desestimó sin perjuicio la *Demanda* de epígrafe. En la misma, razonó el TPI que no hay fundamento en derecho que impida que la parte apelante solicite la ejecución del alegado incumplimiento del acuerdo de transacción en el Tribunal que dictó la *Sentencia*. Es decir, en el caso DAC2017-0001. Además, expuso el foro primario que la reclamación de daños y perjuicios es prematura y procede su desestimación sin perjuicio, pues dependerá de si se concluye que hubo el incumplimiento alegado.

Posteriormente, el 2 de octubre de 2024, Otero González presentó un *Memorando de Costas*. El 9 de octubre de 2024, la parte apelante presentó una *Moción Solicitando Reconsideración*. Ese mismo día, el foro primario emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración. Dicha *Resolución* fue notificada a las partes el 10 de octubre de 2024. En desacuerdo, el 22 de octubre de 2024, la parte apelante presentó una *Moción en Oposición a Memorando de Costas*. Luego, el 23 de octubre de 2024, notificado el 24 de octubre de 2024, el TPI emitió una *Resolución* mediante la cual aprobó la partida de sellos de radicación y una partida reducida a $200.00 de pago de emplazador.

Inconforme, el 8 de noviembre de 2024, Otero Morales compareció ante *nos* mediante un recurso de apelación y señaló la comisión de los siguientes errores:

**A. Primera Señalamiento de Error: Erró el TPI al dictar sentencia desestimando el caso de autos por falta de jurisdicción.**

**B. Segundo Señalamiento de Error: Erró el TPI al imponer costas que no son razonables y necesarias para la tramitación del pleito.**

**II.**

## A. Desestimación

La Regla 10.2 de Procedimiento Civil (32 LPRA Ap. V) le permite al demandado solicitar que se desestime la demanda en su contra antes de contestarla. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, pág. 266. La precitada regla dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra.*

Así pues, entre las defensas mediante las cuales una parte puede solicitar la desestimación de la causa instada en su contra se encuentra el "dejar de exponer una reclamación que justifique la concesión de un remedio". Regla 10.2 (5) de Procedimiento Civil, *supra.* Véase, además, *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 2024 TSPR 13, 213 DPR __ (2024); *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715 (2021).

Ante una moción de desestimación fundamentada en la referida regla, "el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas". *Cobra Acquisitions v. Municipio de Yabucoa et al.*, 210 DPR 384 (2022). Véase, además, *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994). Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que

justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros, supra.*

Asimismo, deberá interpretar las alegaciones de forma conjunta, liberal y de la manera más favorable posible en favor del demandante. *Bonnelly Sagrado v. United Surety, supra; Torres, Torres v. Torres et al.*, 179 DPR 481 (2010). De hecho, tampoco procede la desestimación de la demanda si esta es susceptible de ser enmendada. *Clemente v. Depto. de la Vivienda,* 114 DPR 763 (1983).

Al atender este tipo de moción, el tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil (32 LPRA Ap. V), la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio", por lo que la norma procesal que rige establece que las alegaciones solo buscan "notificarle a la parte demandada a grandes rasgos, cuáles son las reclamaciones en su contra." *Torres, Torres v. Torres et al.*, *supra*, pág. 501. Es por esto que una demanda no será desestimada, salvo que se demuestre "que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera de los hechos que se puedan probar". *Blassino Alvarado et al. v. Reyes Blassino et al.,* 2024 TSPR 93, 214 DPR ___ (2024). Véase, además, *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407 (2012); *Aut. Tierras v. Moreno & Ruiz Dev. Corp, supra,* pág. 428. Por consiguiente, el asunto a considerar es, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels P.R. v. Empire Gas P.R., supra,* pág. 505. Finalmente, este mecanismo procesal no debe ser utilizado en aquellos casos que envuelven un alto interés público, excepto que no haya duda de que, de los hechos alegados en la demanda, no es posible conceder un remedio adecuado al

demandante. *Aut. Tierras v. Moreno & Ruiz Dev. Corp, supra,* pág. 429.

**B. La jurisdicción**

Como es sabido, "[la] jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias". *Municipio de Aguada v. W Construction, LLC,* 2024 TSPR 69, 213 DPR ____ (2024). Véase, además, *RB Power, Inc. v. Junta de Subastas de la ASG PR,* 2024 TSPR 24, 213 DPR ___ (2024); *Pueblo v. Torres Medina,* 211 DPR 950 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). Así, para adjudicar un caso el tribunal debe tener tanto jurisdicción sobre la materia como sobre las partes litigiosas. *Cobra Acquisitions v. Mun. Yabucoa et al., supra,* pág. 394. Por consiguiente, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. *RB Power, Inc. v. Junta de Subastas de la ASG PR, supra; Torres Alvarado v. Maderas Atiles,* 202 DPR 495 (2019).

En ese sentido, el Tribunal Supremo de Puerto Rico ha enfatizado consistentemente que la falta de jurisdicción trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu propio. MCS Advantage v. Fossas Blanco et al.,* 211 DPR 135 (2023). Véase, además, *Fuentes Bonilla v. ELA et al.,* 200 DPR 364 (2018); *González v. Mayagüez Resort & Casino,* 176 DPR 848 (2009).

Además, sabido es que ante la situación en la que un tribunal carece de autoridad para atender un recurso, solamente procede decretar la desestimación del caso ante su consideración. *Lozada Sánchez et al. v. JCA*, 184 DPR 898 (2011). Las cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo. *Pérez Rosa v. Morales Rosado*, 172 DPR 216 (2007). Véase, además, *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345 (2003); *Autoridad Sobre Hogares de P.R. v. Sagastivelza*, 71 DPR 436 (1950). Al hacer esta determinación, debe desestimarse la reclamación sin entrar en los méritos de la controversia. *MCS Advantage v. Fossas Blanco et al.*, *supra*; *González Santos v. Bourns P.R., Inc.*, 125 DPR 48 (1989). En consecuencia, la ausencia de jurisdicción es insubsanable. *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675 (2011); *Vázquez v. A.R.P.E.*, 128 DPR 513 (1991).

Por lo tanto, un tribunal que carece de jurisdicción únicamente tiene jurisdicción para así declararlo y desestimar el caso. *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254 (2018). Véase, además, *Moreno González v. Coop. Ahorro Añasco,* 177 DPR 854 (2010); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873 (2007). A tenor con lo anterior, les corresponde a los tribunales ser los guardianes de su jurisdicción, independientemente de que la cuestión haya sido planteada anteriormente o no. *Dávila Pollock et als. v. R.F. Mortgage,* 182 DPR 86 (2011). Véase, además, *Moreno González v. Coop. Ahorro Añasco, supra*, pág. 859; *S.L.G. Szendrey-Ramos v. F. Castillo, supra.* Así pues, de un tribunal dictar sentencia sin jurisdicción, su decreto será jurídicamente inexistente o *ultra vires. Municipio de Aguada v. W Construction, LLC y otros, supra* citando a *Maldonado v. Junta Planificación,* 171 DPR 46 (2007).

**C. Contrato de transacción**

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil (31 LPRA sec. 9751). Es facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Artículo 1232 del Código Civil (31 LPRA sec. 9753). Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. *Íd.* Así, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. *Íd.* Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil (31 LPRA sec. 9754).

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil (31 LPRA sec. 9771). En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *C.F.S.E. v. Unión de Médicos*, 170 DPR 443 (2007).

En lo que refiere al contrato de transacción, nuestro ordenamiento jurídico establece que es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio." *López Tristani v. Maldonado,* 168 DPR 838 (2006). Es decir, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica. Artículo 1497 del Código Civil (31 LPRA sec. 10641). Así pues, el contrato de

transacción se interpreta restrictivamente. Artículo 1499 del Código Civil (31 LPRA sec. 10643). Así, la transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal. Artículo 1503 del Código Civil (31 LPRA sec. 10647).

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. Artículo 1237 del Código Civil, *supra.* Sobre la causa de un contrato de transacción, nuestro Tribunal Supremo ha expresado que "[e]n conjunto, el litigio y las recíprocas prestaciones constituyen los elementos de la causa". *López Tristani v. Maldonado Carrero, supra*, citando a E. López de Barba, *El contrato de transacción, su resolución por incumplimiento*, Murcia, España, Ediciones Laborum, 2001, pág. 78. Las recíprocas concesiones son sumamente importantes porque estas "constituyen no tan sólo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la causa". *López Tristani v. Maldonado Carrero, supra.*

**D. Ejecución de sentencia**

La ejecución de una sentencia es un mecanismo suplementario que tiene disponible aquel litigante vencedor que desea satisfacer el dictamen final y firme que ha obtenido, poniendo así fin al sinuoso proceso que puede ser el litigio. Así pues, este mecanismo le imprime continuidad a todo proceso judicial que culmina con una sentencia. Es necesario recurrir a la ejecución forzosa de una sentencia cuando la parte obligada incumple con los términos de la sentencia. *Mun. de San Juan v. Prof. Research*, 171 DPR 219 (2007).

A estos fines, la Regla 51.1 de Procedimiento Civil (32 LPRA Ap. V) establece que,

> [l]a parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de esta ser firme.

> Expirado dicho término, la sentencia podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución.

Según ha establecido nuestro máximo Foro, la parte que obtiene sentencia a su favor puede hacerla efectiva en cualquier momento dentro de los cinco años de que esta advenga final y firme, sin tener que presentar moción al tribunal ni notificar a la parte contraria. *Mun. de San Juan v. Prof. Research, supra.* Véase, además, *Igaravidez v. Ricci,* 147 DPR 1 (1998); *Avilés Vega v. Torres,* 97 DPR 144 (1969). Así, la notificación de la ejecución en este período se desfavorece porque tendría el efecto de prevenir al deudor dándole la oportunidad para esconder o transferir propiedades y frustrar así el propósito del mandato de ejecución. *Avilés Vega v. Torres, supra,* pág. 149. Por lo tanto, solo cuando expira el término de cinco años se requiere autorización del tribunal para la ejecución de la sentencia, previa moción de parte y notificación a todas las partes. Regla 51.1 de Procedimiento Civil, *supra.* Véase, además, *Mun. de San Juan v. Prof. Research, supra.* La autorización del tribunal es de carácter discrecional y depende de la justificación que presente el promovente de la ejecución para establecer el por qué no se llevó a cabo la misma dentro del plazo de cinco años. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* San Juan, 5ta ed., Ed. LexisNexis, 2010, pág. 569. Además, el ejecutante tiene que acreditar, con hechos probados, que la sentencia no ha sido satisfecha y que no existe razón alguna que impida su ejecución. *Banco Terr. y Agríc. De P.R. v. Marcial,* 44 DPR 129 (1932).

Con relación a la controversia que nos atañe, el Tribunal Supremo ha establecido que, cuando se trata de una transacción judicial si una de las partes incumple con lo estipulado, se puede

solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. *Igaravidez v. Ricci, supra*, pág. 7. Así, la regla general es que todas las sentencias se ejecutan en el tribunal de origen, es decir, en el tribunal que dictó la sentencia que se pretende ejecutar. *Íd.*

Asimismo, establece la Regla 51.3 de Procedimiento Civil (32 LPRA Ap. V) que:

> [c]uando una sentencia ordene a una parte transferir el dominio de terrenos y otorgar escrituras y otros documentos, o realizar cualquier otro acto específico, y dicha parte no cumpla tal orden dentro del término especificado, el tribunal podrá ordenar que otra persona por él designada realice el acto a expensas de la parte que incumple. Cuando el acto haya sido realizado de este modo, tendrá el mismo efecto que si se hubiese ejecutado por la parte.

## E. La imposición de costas

La Regla 44.1 de Procedimiento Civil (32 LPRA Ap. V), rige la concesión de costas en nuestro ordenamiento jurídico. Dicha disposición tiene una función reparadora, ya que permite el reembolso de los gastos necesarios y razonables en los que tuvo que incurrir la parte prevaleciente del pleito en la tramitación de este. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012). Así, su derecho no queda menguado por los gastos que tuvo que incurrir sin su culpa y por culpa del adversario. *Íd.*, pág. 934.

Así pues, esta norma de derecho procesal tiene dos (2) propósitos: (1) restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar; y, (2) penalizar la litigación inmeritoria, temeraria o viciosa. *Auto Servi, Inc. v. E.L.A.*, 142 DPR 321 (1997). En nuestra jurisdicción, la imposición de costas a la parte vencida es una norma que es mandatoria. *ELA v. El Ojo de Agua Development,* 205 DPR 502 (2020); *Montañez v. U.P.R.*, 156 DPR 395 (2002). No obstante, su concesión no opera de forma automática, ya que se tiene que presentar oportunamente un

memorando de costas en el que se precisen los gastos incurridos. *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170 (2008);

Por lo cual, una vez se presenta oportunamente el memorando de costas, el tribunal deberá determinar cuáles gastos fueron necesarios y razonables y conceder las mismas a la parte victoriosa. *Auto Servi, Inc. v. E.L.A., supra*; *J.T.P. Dev. Corp. v. Majestic Realty Corp.,* 130 DPR 456 (1992). Ahora bien, son costas los gastos necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez. Regla 44.1 de Procedimiento Civil, *supra*. Véase, además, *J.T.P. Dev. Corp. v. Majestic Realty Corp, supra,* pág. 460; R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, sec. 4201, pág. 381.

Así, las costas que contempla la Regla 44.1 de Procedimiento Civil, *supra*, son gastos: (a) necesarios; (b) incurridos; y, (c) razonables. Su razonabilidad se entenderá dentro de la realidad económica de Puerto Rico y, en cuanto a los gastos personales, además, se tendrá en cuenta la condición económica de las personas concernidas (testigos y litigantes). No se aprobarán gastos innecesarios, superfluos o extravagantes. *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245 (1963). Así pues, la razón de ser de esta norma es, resarcir a la parte que resultó victoriosa de los gastos necesarios y razonables incurridos por motivo del pleito y penalizar la litigación viciosa. *Íd.*, pág. 248-249.

### III.

En el caso ante *nos*, la parte apelante alegó que erró el TPI al dictar *Sentencia* desestimando el caso de autos por falta de jurisdicción.

Según se desprende del tracto fáctico expuesto, la parte apelante presentó una *Demanda* sobre incumplimiento de contrato y ejecución de sentencia. En esta, afirmó que la apelada incumplió las cláusulas y condiciones del acuerdo confidencial que puso fin al caso DAC2017-0001. Por lo cual, solicitó la ejecución de la sentencia y el resarcimiento de los presuntos daños.

Posteriormente, Otero Morales presentó una *Solicitud de Sentencia Sumaria Parcial*. Por su parte, Otero González presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria Parcial*. Acto seguido, el foro primario dictó una *Sentencia* mediante la cual desestimó sin perjuicio la *Demanda* de autos. En esta, el TPI expresó que no hay fundamento en derecho que impida que la parte apelante solicite la ejecución del alegado incumplimiento del acuerdo de transacción en el caso DAC2017-0001. Indicó, además, que el apelante había presentado mociones *post* sentencia en la sala que había emitido la *Sentencia* que pretendía ejecutar y que no había transcurrido el período de cinco (5) años dispuesto en la Regla 51.3 de Procedimiento Civil, *supra*, para que el apelante presentara un procedimiento de ejecución de sentencia.

Asimismo, razonó el foro primario que la reclamación de daños y perjuicios es prematura y procede su desestimación sin perjuicio, pues dependerá de si se concluye que hubo el incumplimiento alegado.

Según el derecho que antecede, un contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, *supra*. Así, lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil, *supra*. El contrato queda perfeccionado desde que las partes manifiestan su consentimiento

sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil, *supra.*

En lo que refiere al contrato de transacción, nuestro ordenamiento jurídico establece que es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio." *López Tristani v. Maldonado, supra.* Es decir, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica. Artículo 1497 del Código Civil, *supra.* En vista de ello, la transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal. Artículo 1503 del Código Civil, *supra.*

Con relación a la controversia ante *nos*, el Tribunal Supremo ha establecido que, cuando se trata de una transacción judicial si una de las partes incumple con lo estipulado, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. *Igaravidez v. Ricci, supra.* Así, la regla general es que todas las sentencias se ejecutan en el tribunal de origen, es decir, en el tribunal que dictó la sentencia que se pretende ejecutar. *Íd.*

A la luz del marco jurídico enunciado, es preciso determinar que la ejecución de la *Sentencia* en el caso DAC2017-0001 y la evaluación del presunto incumplimiento con los acuerdos alcanzados por las partes, debe ser resuelto en dicho caso. Esto, pues dicha ejecución se deriva del acuerdo transaccional que dio base a la *Sentencia* en el mencionado caso. Por consiguiente, tal y como resolvió el TPI, este no tiene jurisdicción para atender la

solicitud de ejecución de la *Sentencia,* pues reiteramos que dicha solicitud corresponde realizarse en el caso DAC2017-0001. Maxime cuando ya la parte apelante ha presentado mociones *post* sentencia en dicho caso relacionadas a tal incumplimiento.

No debemos pasar por desapercibido que, las cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo. *Pérez Rosa v. Morales Rosado, supra.* Además, es preciso recordar que los tribunales tienen el ineludible deber de auscultar su propia jurisdicción. *MCS Advantage v. Fossas Blanco et al., supra.*

En conclusión, no incidió el TPI al dictar *Sentencia* desestimando el caso por falta de jurisdicción. Indiscutiblemente, procedía que la parte apelante presentara la solicitud de ejecución de sentencia en el caso DAC2017-0001; por lo tanto, reiteramos que el foro primario carece de jurisdicción para atender la reclamación de epígrafe.

Por último, enunció la parte apelante que erró el TPI al imponer costas que no son razonables y necesarias para la tramitación del pleito. No tiene razón. El propósito de la imposición de costas es restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar y penalizar la litigación inmeritoria, temeraria o viciosa. *Auto Servi, Inc. v. E.L.A.*, supra. Además, de que la imposición de costas a la parte vencida es una norma que es mandatoria. *ELA v. El Ojo de Agua Development, supra.* Por consiguiente, al hacer un análisis detallado de la *Resolución* apelada, es forzoso concluir que las costas impuestas por el foro primario a la parte apelante son razonables. Pues, el foro primario solo concedió $90.00 por la partida de sellos de radicación y una partida reducida de $200.00 de pago de emplazador.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* y la *Resolución* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente con opinión escrita.



Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ANTONIO OTERO MORALES<br><br>Apelante<br><br><br>v.<br><br><br>EDELYN IVETTE OTERO GONZÁLEZ<br><br>Apelada | KLAN202401006 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: NJ2023CV00125<br><br>Sala: 702<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO, EJECUCIÓN DE SENTENCIA, DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ**

El señor Antonio Otero Morales presentó una demanda contra la señora Edelin Ivette Otero González. En esta explicó que la señora Otero González había presentado una demanda en su contra, el 3 de enero de 2017, caso civil D AC2017-001. En aquella ocasión, la señora Otero González suplicaba al foro primario que se dejara sin efecto una orden emitida, en otro caso, entre las partes, que le obligaba a relocalizar un pozo séptico ubicado dentro de la propiedad del señor Otero Morales. En aquel entonces, Otero Morales presentó una reconvención contra Otero González. Sostiene el apelante, en su escrito de apelación, que luego de un largo proceso judicial y del descubrimiento de prueba, el 18 de febrero de 2022, las partes alcanzaron un acuerdo confidencial bajo el caso civil D AC2017-001. El acuerdo fue acogido por el Tribunal que emitió una sentencia al amparo de la Regla 39.1 (a)(2)[1] de las de Procedimiento

---

[1] (2) mediante la presentación de una estipulación de desistimiento firmada por todas las partes que hayan comparecido en el pleito.

Civil el 9 de marzo de 2022. Es decir, la demandante en el caso civil D AC2017-001, señora Otero González, **desistió de la reclamación en contra del señor Otero Morales,** por haber alcanzado un acuerdo confidencial entre las partes. El acuerdo no se hizo formar parte del expediente, toda vez que se presentó una petición de desistimiento. Sostuvo Otero Morales que, una vez firmado el acuerdo y habiendo recaído sentencia de archivo del caso, la parte aquí demandada, de forma temeraria, caprichosa y contumaz se negó a cumplir con lo pactado. Puntualizó en su demanda que, Otero González se había negado a cumplir con los acuerdos alcanzados. Entonces explicó que el incumplimiento de Otero González con lo acordado le había ocasionado daños, pues no había podido vender su predio de terreno, debido a que tiene un pozo séptico invadiendo el mismo. Reclamó haber perdido varias oportunidades de vender su terreno. También sostuvo que la situación le había causado angustias mentales, al éste no poder disfrutar su finca de forma libre e irrestricta, obligándole a soportar un "taking" sobre su propiedad. Lo anterior, debido a que, a pesar de que Otero González no había realizado los correspondientes trámites de escrituras de segregación y agrupación y no había cumplido con los acuerdos, actuaba y reclamaba la titularidad de los predios aún no segregados. Además, ésta utilizaba los predios para disponer de basura, hacer suyos los frutos de la finca y prohibía el uso de la finca a Otero Morales.

En la reclamación presentada ante el Tribunal de Primera Instancia, Otero Morales solicitó la ejecución de la sentencia conforme a la Regla 51.1 de las de Procedimiento Civil, refiriéndose, a la ejecución de la sentencia o el acuerdo confidencial suscrito entre las partes en el caso civil D AC2017-001. Además, solicitó remedio conforme a la Regla 51.3 (a) y 51.5 de Procedimiento Civil. Requirió

honorarios de abogado en contra de Otero González por la temeridad desplegada al negarse a cumplir un acuerdo que le resultaba, según el apelante, en extremo beneficioso para ésta. Reclamó la designación de un alguacil para la firma de cualquier escritura en nombre de Otero González y una cantidad no menor a veinticinco mil dólares ($25,000.00) por concepto de daños y perjuicios contractuales. Finalmente suplicó intereses a razón del tipo legal prevaleciente y que se ordenara el pago de todos los gastos necesarios para hacer efectiva la sentencia, incluyendo las gestiones realizadas bajo el caso D AC2017-0001, gastos que al momento estimó en dos mil quinientos un dólar con cincuenta centavos ($2,501.50). Eventualmente presentó una solicitud de adjudicación sumaria a la que se opuso Otero González. El foro recurrido desestimó la Demanda, por entender que no había razón para no solicitar la ejecución de la sentencia en el caso anterior entre las partes, el D AC2017-0001. Razonó que, al no haber transcurrido cinco (5) años, no había que solicitar la aprobación del tribunal sentenciador. Concluyó que la evaluación del alegado incumplimiento con los acuerdos pactados debía ser resuelta en el caso anterior por derivarse del Acuerdo Transaccional y Confidencial que dio base a la Sentencia de desistimiento, a tenor con la Regla 39.1 (a) (2).

Inconforme, Otero Morales cuestiona la desestimación del recuro de epígrafe y la imposición de costas, a su entender irrazonables e innecesarias para la tramitación del pleito.

La Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V, establece lo concerniente al desistimiento. Específicamente dispone:

> (a) Por el demandante; por estipulación. Sujeto a las disposiciones de la Regla 20.5, una parte demandante podrá desistir de un pleito sin una orden del tribunal:
>
> > (1) mediante la presentación de un aviso de desistimiento en cualquier fecha antes de la notificación por la parte adversa de la contestación

o de una moción de sentencia sumaria, cualesquiera de éstas que se notifique primero, o

**(2) mediante la presentación de una estipulación de desistimiento firmada por todas las partes que hayan comparecido en el pleito.**

A menos que el aviso de desistimiento o la estipulación exponga lo contrario, el desistimiento será sin perjuicio, excepto que el aviso de desistimiento tendrá el efecto de una adjudicación sobre los méritos cuando lo presente un demandante que haya desistido anteriormente en el Tribunal General de Justicia, o en algún tribunal federal o de cualquier estado de Estados Unidos de América, de otro pleito basado en o que incluya la misma reclamación. ... 32 LPRA Ap. V.

Conforme una lectura de parte de la Regla 39.1 de Procedimiento Civil concluyo que el desistimiento presentado por todas las partes en el caso D AC2017-001 no constituyó una adjudicación en los méritos. La propia regla aclara que se entenderá como una adjudicación, cuando lo presente un demandante que haya desistido anteriormente en el Tribunal General de Justicia, o en algún tribunal federal o de cualquier estado de Estados Unidos de América, de otro pleito basado en o que incluya la misma reclamación. Siendo el pleito D AC2017-001 el anterior entre las partes, el primero, y habiendo la parte apelada presentado una solicitud para desistir, petición que fue avalada por el apelante y aceptada por el Tribunal de Primera Instancia dictando sentencia al amparo de la Regla 39.1 (a)(2); la determinación judicial no consistió en una adjudicación en los méritos, sino en la aceptación de la voluntad de las partes. Cabe resaltar que, el acuerdo entre las partes por escrito que motivo el desistimiento, no se hizo formar parte del expediente judicial. Entonces, precisa cuestionarse ¿qué pretendemos que se ejecute? ¿Para qué el foro recurrido desestima la reclamación? ¿Qué entiende el foro recurrido que puede ejecutar el apelante en el pleito anterior, el D AC2017-001? A mi entender, no hay nada que ejecutar en el pleito anterior, lo que existe es un desistimiento mediante una estipulación voluntaria extrajudicial de

las partes, seguida de una sentencia que meramente reconoció el fin del pleito, sin representar una adjudicación en los méritos.

Entonces como cuestión práctica y de acceso al foro judicial, me parece que el foro recurrido debió haber atendido la controversia entre las partes sin dar más largas al asunto. Mi parecer no solo obedece a mi visión de un tribunal práctico, ágil y que verdaderamente trabaje para dar acceso a los ciudadanos, sino también a las expresiones del Tribunal Supremo de Puerto Rico en *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860 (1995). En dicho caso, el más Alto Foro judicial local explicó la diferencia entre un contrato de transacción judicial y uno extrajudicial. En lo que nos concierne, puntualizó que puede ocurrir que, estando aún un pleito pendiente en un tribunal, las partes acuerden una transacción sin la intervención del foro judicial. Concluyó que, en ese caso, existe un contrato de transacción extrajudicial y bastará un mero aviso de desistimiento. Para resolver la controversia ante el foro, en aquel entonces, era importante determinar si la transacción debía producir el mismo efecto que la sentencia firme, es decir, la autoridad de cosa juzgada, o si, por el contrario, debía limitarse a constituir un contrato, como cualquier otro, que requiriese un nuevo litigio para su ejecución, en defecto de su cumplimiento. Concluyó el Tribunal Supremo de Puerto Rico que la transacción judicial es la única que tiene fuerza para abrir la vía de apremio, es decir, pedir la ejecución como si se tratara de una sentencia firme. *Neca Mortg. Corp. V. A & W Dev. S.E.*, supra, pág. 862. Distinguió la manera de poder llevar a la práctica lo convenido en una transacción, según que ésta sea extrajudicial o judicial. Explicó que la transacción judicial puede llevarse a efecto por los trámites de la ejecución de sentencias, mientras que la extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. Estableció en el caso y cito: "aclaramos que, si se trata de una

transacción judicial y una de las partes no cumple con lo estipulado, como regla general no procede la resolución. En estos casos, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. Por otro lado, si se trata de una transacción extrajudicial, se puede solicitar la resolución, ya que en ese caso no se producen los rigurosos efectos antes mencionados. Esto es, no puede llevarse a cumplimiento inmediatamente, sino que es preciso que se haya declarado su eficacia en el juicio correspondiente y el tribunal, al evaluar el contrato, puede conceder el remedio de la resolución, siempre y cuando se cumpla con los requisitos establecidos en el Art. 1077 del Código Civil, *supra."* Son dichas expresiones referentes al cumplimiento específico del contrato de transacción entre Neca y A&W que sostienen mi opinión. Primeramente, el contrato entre las partes de epígrafe fue uno extrajudicial, el mismo, como anticipé, ni siquiera formó parte del expediente. Segundo, siendo un contrato de transacción extrajudicial procede la solicitud de cumplimiento, luego de que se haya declarado su eficacia en el juicio correspondiente que, a mi entender, era ante el Tribunal de Primera Instancia en el caso que nos ocupa. O sea, el caso civil NJ2023CV00125.

Por las razones antes mencionadas, discrepo de la opinión mayoritaria. Opino que la sentencia en el primer pleito entre las partes no está basada en el acuerdo transaccional extrajudicial. El Tribunal de Primera Instancia no la incluyó en su dictamen. La sentencia emitida en ese primer pleito está basada en la voluntad del demandante de desistir de la reclamación incoada y la aquiescencia del demandado en que así fuera. No constituyó una adjudicación en los méritos.

En mi lugar, hubiese revocado la determinación recurrida y hubiese ordenado al foro recurrido atender primeramente la validez del contrato de transacción extrajudicial entre las partes y en última instancia, su incumplimiento, si alguno.

Por otro lado, toda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones. 32 LPRA Ap. V, R. 42.4. Independientemente de la súplica de una demanda, un tribunal concederá en su sentencia el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no lo haya solicitado. *Neca Mortg. Corp. V. A & W Dev. S.E.*, supra, págs. 868-869; *A.T.P.R. v. Padín Santiago,* 104 DPR 426, 428 (1975). Por último, es un principio bien establecido que, al considerar una moción para desestimar una demanda, ésta debe ser evaluada de forma crítica. Es decir, hay que examinar los hechos alegados en la demanda de la manera más favorable a la solicitud del demandante, y sólo procede la desestimación si de las alegaciones no se puede deducir el derecho a la consecución de remedio alguno. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842, 858 (1991); *Romero Arroyo v. E.L.A.*, 127 DPR 724, 737-738 (1991); *Granados v. Rodríguez Estrada I,* 124 DPR 1, 48 (1989). No albergo dudas que lo que pretende el apelante, aunque haya utilizado una súplica que se presta a confusión, es el cumplimiento del acuerdo entre las partes que dio base a la desestimación en el pleito anterior, por lo que no veo impedimento alguno para evaluar la eficacia del acuerdo y los daños por incumplimiento, si alguno, en el pleito de epígrafe. En fin, hubiese revocado.

En San Juan, Puerto Rico, a 8 de enero de 2025.



Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones